# United States Court of Appeals for the Federal Circuit

2008-1367

MARK D. FELIX,

Plaintiff-Appellant,

v.

AMERICAN HONDA MOTOR COMPANY, INC.,
AMERICAN HONDA FINANCE CORPORATION
(doing business as Honda Financial Services),
HONDA OF AMERICA MANUFACTURING, INC.,
HONDA OF CANADA, INC. (doing business as Honda of Canada Manufacturing),
HONDA R & D AMERICAS, INC., and HONDA TRADING AMERICA CORPORATION,

Defendants-Appellees.


     R. Scott Johnson, McKee, Voorhees & Sease, P.L.C., of Des Moines, Iowa, argued for plaintiff-appellant.  Of counsel on the brief was Edward A. McConwell, Jr., McConwell Law Offices, of Mission, Kansas.

     John M. Caracappa, Steptoe & Johnson LLP, of Washington, DC, argued for defendants-appellees.  With him on the brief were Charles F. Schill, Daniel L. Girdwood, and Gretchen P. Miller.

Appealed from:  United States District Court for the District of Kansas

Judge Carlos Murguia

# United States Court of Appeals for the Federal Circuit

2008-1367

MARK D. FELIX,

Plaintiff-Appellant,

v.

AMERICAN HONDA MOTOR COMPANY, INC.,
AMERICAN HONDA FINANCE CORPORATION
(doing business as Honda Financial Services),
HONDA OF AMERICA MANUFACTURING, INC.,
HONDA OF CANADA, INC. (doing business as Honda of Canada Manufacturing),
HONDA R & D AMERICAS, INC., and HONDA TRADING AMERICA CORPORATION,

Defendants-Appellees.

Appeal from the United States District Court for the District of Kansas in case no. 05-CV-2525, Judge Carlos Murguia.

_____

DECIDED: April 10, 2009
_____

Before RADER, FRIEDMAN, and LINN, <u>Circuit Judges</u>.

LINN, <u>Circuit Judge</u>.

This is a patent infringement case. Mark D. Felix ("Felix") brought suit against American Honda Finance Corporation (d/b/a Honda Financial Services), American Honda Motor Company, Inc., Honda of America Manufacturing, Inc., Honda of Canada, Inc. (d/b/a Honda of Canada Manufacturing), Honda R & D Americas, Inc., and Honda Trading America Corporation (collectively, "Honda"), alleging that the In-Bed Trunk of Honda's Ridgeline truck infringed claim 6 of Felix's U.S. Patent No. 6,155,625 (the "'625 patent"). Following claim construction, the district court granted Honda's motions for

summary judgment of no literal infringement, <u>Felix v. Am. Honda Motor Co.</u>, No. 05-2525-CM (D. Kan. Oct. 19, 2007) ("<u>Literal Infringement Op.</u>"), and no infringement under the doctrine of equivalents, <u>Felix v. Am. Honda Motor Co.</u>, No. 05-2525-CM (D. Kan. Apr. 9, 2007) ("<u>Equivalents Op.</u>"). Because we conclude that the district court's claim constructions were correct in all relevant respects, and because we agree with the district court that there was no literal infringement and that the doctrine of prosecution history estoppel precludes a finding of infringement by equivalents, we affirm.

## I. BACKGROUND

Felix is the sole named inventor and owner of the '625 patent. <u>Literal Infringement Op.</u> at 1. The '625 patent describes an arrangement in which a pickup truck is provided with what would be considered the trunk of a conventional car. Specifically, the patent relates to "a built-in storage compartment for a pickup truck bed." '625 patent col.1 ll.7-8. The storage compartment is mounted below the truck bed, and can be accessed through an opening in the bed, as illustrated in figure 1:



FIG. 1

Id. fig.1. The "lid assembly" that covers the compartment "includes a lid hingedly mounted on the bed for movement between an open position providing access to an interior of the compartment and a closed position closing the vehicle bed opening." Id. col.1 ll.49-52.

Of particular relevance to this case and as depicted in figure 4 below, a "gasket **18** is mounted on the inner flange **16** for weather sealing the storage system **2**." Id. col.3 ll.11-12. The relationship between the gasket, hinges, and lid is described as follows:

> The hinges **28** mount the lid **22** in proximity to its front edge **22***a* and accommodate movement of the lid **22** between a closed position (FIG. **2**) with the gasket **18** sealingly engaging the lid **22** adjacent to its edges **22***a*–*d* on the lid lower surface **22***f* and an open position (FIGS. **1**, **3** and **4**) providing access to the compartment interior **26** through the truck bed floor opening **10**.

Id. col.3 ll.22-28.



Id. fig.4.

Claim 6 of the '625 patent recites:

In combination with a vehicle including a vehicle bed, the improvement of a storage system which includes:

a) an opening formed in the vehicle bed and including an opening rim;

b) a compartment with an interior;

c) said compartment being mounted on said bed with said compartment interior accessible through said opening;

d) a lid assembly including lid mounting means for mounting said lid in covering relation with respect to said opening;

e) a channel formed at the rim of said bed opening and including an inner flange;

f) <u>a weathertight gasket mounted on said flange and engaging said lid in its closed position</u>; and

g) a plurality of drain holes formed in said channel.

Id. col.4 l.61-col.6 l.3 (emphasis added).

Claim 6 was the result of a series of amendments during prosecution. The '625 patent issued from U.S. Patent Application No. 08/951,246, filed October 16, 1997. See '625 patent [21], [22]. The original application contained twelve claims, three of which are relevant to this appeal:

1. A storage system for a vehicle including a vehicle bed, which includes:

   a) an opening formed in the vehicle bed and including an opening rim;

   b) a compartment with an interior;

   c) mounting means for mounting said compartment on said bed with said compartment interior accessible through said opening; and

   d) a lid assembly including lid mounting means for mounting said lid in covering relation with respect to said opening.

   *   *   *

7. The storage system according to Claim 1, which includes:

   a) a channel formed at the rim of said bed opening and including an inner lip; and

   b) a weathertight gasket mounted on said lip and engaging said lid in its closed position.

8. The storage system according to claim 7, which includes:

   a) a plurality of drain holes formed in said channel.

J.A. 448, 450. Original claim 1 included the substance of limitations (a), (b), (c), and (d) of issued claim 6. Original claim 7 added the substance of what became limitations (e) (the "channel") and (f) (the "gasket") of issued claim 6, and original claim 8 added the substance of what became limitation (g) (the "drain holes") of issued claim (6).

On June 9, 1999, the United States Patent and Trademark Office ("Patent Office") mailed a first office action. Id. at 478. In it, the examiner rejected original

claims 1 and 7 as obvious under 35 U.S.C. § 103.[1]  Id. at 481, 483.  Specifically, the examiner rejected original claim 1 as obvious in light of U.S. Patent No. 5,363,890 ("Cooper '890") in view of U.S. Patent No. 4,733,898 ("Williams").  Id.  The examiner rejected original claim 7 as obvious in light of Cooper '890 in view of Williams and U.S. Patent No. 2,671,935 ("Flues"), which disclosed "a channel, a[n] inner lip and a weathertight gasket mounted on the inner lip."  J.A. 483 (citations to reference characters omitted).  The examiner concluded, however, that original claim 8 would be allowable if rewritten in independent form.  Id. at 484.  The relevant aspects of the original application and first office action can therefore be summarized as follows:

|  | Limitations of Issued Claim 6 | Disposition |
|---|---|---|
| Original Claim 1 | (a), (b), (c), (d) | Obvious (Cooper '890/Williams) |
| Original Claim 7 | (a), (b), (c), (d), (e), (f) | Obvious (Cooper '890/Williams/Flues) |
| Original Claim 8 | (a), (b), (c), (d), (e), (f), (g) | Allowable if rewritten |

On September 10, 1999, Felix submitted an amendment in response to the first office action.  Id. at 489.  In it, Felix canceled original claim 1 and did not replace it with any claim reciting the same subject matter.  Id. at 490.  Felix also cancelled original claim 7, rewriting it in independent form as new claim 14:

14. (Claim 7 rewritten in independent form)  A storage system for a vehicle including a vehicle bed, which includes:

   a) an opening formed in the vehicle bed and including an opening rim;

   b) a compartment with an interior;

   c) said compartment being mounted on said bed with said compartment interior accessible through said opening;

   d) a lid assembly including lid mounting means for mounting said lid in covering relation with respect to said opening;

---

[1]     The examiner also rejected claim 7 as indefinite as a result of its recitation of "[a]n inner lip."  J.A. 480.  Felix corrected this indefiniteness by amending "inner lip" to "inner flange."  J.A. 493.

e) a channel formed at the rim of said bed opening and including an inner flange; and

f) a weathertight gasket mounted on said flange and engaging said lid in its closed position.

Id. at 491.  Felix requested that the examiner reconsider her rejection of original claim 7 (now claim 14), and argued that:

> [T]he cited references do not show the channel of Claim 7, which is formed at the rim of the bed opening, in combination with the other structure of Claims 1 and 7.  Thus, new, infinite [sic: independent] Claim 14 is allowable over the prior references of record, taken singularly or in combination.

Id. at 494.  Correspondingly, Felix amended original claim 8 so that it depended from amended claim 14, rather than from the now canceled original claim 7.  Id. at 490.

On October 21, 1999, the Patent Office mailed a second office action.  Id. at 499. In it, the examiner rejected claim 14 as obvious in light of Cooper '890 in view of U.S. Patent No. 5,172,519 ("Cooper '519").  The examiner indicated again that amended claim 8 would be allowable if rewritten in independent form.[2]  The relevant aspects of Felix's first amendment and the second office action can therefore be summarized as follows:

|  | Limitations of Issued Claim 6 | Disposition |
| --- | --- | --- |
| Original Claim 1 | (a), (b), (c), (d) | Cancelled |
| Original Claim 7 | (a), (b), (c), (d), (e), (f) | Rewritten as Claim 14 |
| Claim 14 | (a), (b), (c), (d), (e), (f) | Obvious (Cooper '890/Cooper '519) |
| Amended Claim 8 | (a), (b), (c), (d), (e), (f), (g) | Allowable if rewritten |

On January 21, 2000, Felix submitted a second amendment.  J.A. 505.  In it, he cancelled claim 14 and did not replace it with any claim reciting the same subject

---

[2]     The examiner also rejected amended claim 8 under 35 U.S.C. § 112, ¶ 2, because of an inconsistency in the language used in the preamble as a result of the earlier amendment, but indicated that it would be allowable if rewritten to cure this deficiency.  J.A. 501, 504.

matter.  Id.  He also cancelled amended claim 8 and rewrote it in independent form as new claim 16:

> 16. (Claim 8 rewritten in independent form)  In combination with a vehicle including a vehicle bed, the improvement of a storage system which includes:
>
> a) an opening formed in the vehicle bed and including an opening rim;
>
> b) a compartment with an interior;
>
> c) said compartment being mounted on said bed with said compartment interior accessible through said opening;
>
> d) a lid assembly including lid mounting means for mounting said lid in covering relation with respect to said opening;
>
> e) a channel formed at the rim of said bed opening and including an inner flange;
>
> f) a weathertight gasket mounted on said flange and engaging said lid in its closed position; and
>
> g) a plurality of drain holes formed in said channel.

Id. at 508-09.  The examiner allowed claim 16, and it issued as claim 6.  Id. at 435, 513. The relevant aspects of Felix's second amendment and third office action can be summarized as follows:

|  | Limitations of Issued Claim 6 | Disposition |
|---|---|---|
| Claim 14 | (a), (b), (c), (d), (e), (f) | Cancelled |
| Amended Claim 8 | (a), (b), (c), (d), (e), (f), (g) | Rewritten as Claim 16 |
| Claim 16 | (a), (b), (c), (d), (e), (f), (g) | Allowed as Claim 6 |

Felix accused Honda of infringing claim 6.  Literal Infringement Op. at 1.  Honda's accused In-Bed Trunk includes a lid, a gasket, and a flange.  The position of the gasket in the In-Bed Trunk is, however, different from the position of the gasket shown in figure 4 of the '625 patent.  As depicted in the diagram below, the In-Bed Trunk's gaskets (indicated as A and B) are affixed to the lid (shown darker), rather than to any flange of the channel:



See id. at 2.[3]

During a Markman hearing, the district court construed the claim term "mounted" to mean "securely affixed or fastened to" and construed "engaging" to mean "coming together and interlocking." Id. Honda then filed separate motions for summary judgment—one asserting no literal infringement, and the other asserting no infringement

---

[3] The parties and the district court treated the illustration shown above as representative of the accused In-Bed Trunk. See Literal Infringement Op. at 2. The only actual engineering diagram of the In-Bed Trunk that illustrates the relative position of the lid, gaskets, and flanges shows the lid in a closed position, though the general configuration of the lid, gaskets, and flanges appears to be the same as the configuration in the illustration. See Mem. in Support of Mot. for Summ. J., Ex. 10, Felix v. Am. Honda Motor Co., No. 05-2525-CM (D. Kan. Apr. 4, 2007).

under the doctrine of equivalents. See id. at 1, 6. Applying its claim construction, the district court concluded that the In-Bed Trunk did not satisfy limitation (f) of claim 6 (the "gasket limitation"), because it did not contain "a weathertight gasket mounted on said flange." Id. at 5. As the district court put it, "[i]n essence, the difference between the '625 patent and the In-Bed Trunk® is that the '625 weatherstrip is mounted to the flange." Id. at 6. The district court therefore granted Honda's motion for summary judgment of no literal infringement. Id.

Addressing the doctrine of equivalents, the district court first noted that the parties agreed that the presumption of prosecution history estoppel applied to the gasket limitation. Equivalents Op. at 5. The district court rejected Felix's argument that the amendment adding the gasket limitation was tangential to patentability, and it therefore concluded that Felix was estopped from asserting infringement of the gasket limitation by equivalents. Id. at 7. The district court therefore granted Honda's motion for summary judgment of no infringement under the doctrine of equivalents, and it entered final judgment in Honda's favor. Id. at 8.

Felix timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## II. DISCUSSION

### A. Claim Construction

Claim construction is an issue of law, Markman v. Westview Instruments, Inc., 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc), that we review de novo, Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc). We determine the ordinary and customary meaning of undefined claim terms as understood by a person of ordinary skill in the art at the time of the invention, using the methodology in Phillips v. AWH Corp., 415 F.3d 1303, 1312-19 (Fed. Cir. 2005) (en banc). "[T]he court looks to

those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean. Those sources include the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." Id. at 1314 (internal quotation marks and citations omitted).

### 1. "mounted"

The district court construed "mounted" to mean "securely affixed or fastened to." Literal Infringement Op. at 2. Felix argues that "mounted" has the broader meaning of simply "positioned." Felix offers four arguments in support of this broader construction, each of which we reject.

First, Felix argues that the claims consistently use the term "mounted" or "mounting" "to relate the relative position of one item with another," rather than to denote affixing or fastening. Appellant's Br. at 21. Felix cites various examples from the claim language, including "a proximate end pivotally mounted in said compartment interior," "a pair of hinges each mounted on said vehicle bed," "a catch mounted on said compartment back wall," "a latch mounted on said lid lower surface," and "a knob mounted on said cable proximate end." Id. at 21 (quoting '625 patent col.4 ll.7-9, 11, 16, 18, 23-24). Felix is correct that, "[b]ecause claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims." Phillips, 415 F.3d at 1314. But nothing in the language of <u>any</u> of the claims requires or even suggests that "mounted" means simply "positioned" as Felix asserts. To the contrary, the use of "mounted" in the very claim terms that Felix cites strongly suggests that "mounted" means "securely affixed or

fastened to." Specifically, claim 1 recites a catch "mounted" on a back wall of the storage compartment. '625 patent col.4 l.16. If the catch were merely "positioned" on the back wall without being securely affixed or fastened to the wall, it would fall off. Likewise, claim 1 recites a latch "mounted" on the lid's lower surface—i.e., on the underside of the lid. Id. col.4 l.18. If the latch were merely "positioned" on the underside of the lid, it would fall off. It is difficult to imagine how—consistent with the law of gravity—any structure could be "mounted" on the underside of any other structure if "mounted" merely meant "positioned." Additionally, claim 1 recites a prop rod "pivotally mounted" in the interior of the compartment. Id. col.4 ll.7-9. The adverb "pivotally" modifies "mounted" to make clear that the rod can pivot on the compartment interior. But if "mounted" meant simply "positioned," then "pivotally" would be surplusage, because the rod would not be affixed to the compartment interior and could move freely, without needing to "pivot" relative to the interior. We therefore conclude that the claims use "mounted" consistently to mean "securely affixed or fastened to."

Second, Felix argues that the specification does not provide "a specific method of mounting one item on or to another," but merely provides one non-limiting example— "welding." Appellant's Br. at 21-22. To the contrary, like the claims, the specification repeatedly uses "mounted" to describe structures that must be securely affixed or fastened together, else they would fall apart by operation of gravity. See, e.g., '625 patent col.3 ll.28-29 ("catch . . . mounted on the compartment back wall"); id. col.3 ll.30-31 ("latch . . . mounted on the lid lower surface"); id. col.3 ll.33-34 ("actuator cable . . . mounted on the lid lower surface); id. col.3 ll.39-40 ("prop rod . . . with a proximate end . . . mounted on the compartment front wall"); id. col.3 ll.44-45 ("retainer . . . mounted on

the compartment back wall"). Moreover, both of the examples of types of mounting discussed in the specification are examples of securely affixing or fastening two structures together. See id. col.3 ll.15-16 ("A compartment . . . is mounted (e.g., welded) on the truck bed floor . . ." (emphasis added).); id. col.3 ll.32-35 ("[A]n actuator cable [is] mounted on the lid lower surface . . . by mounting clips . . . ." (emphasis added)) The specification therefore consistently uses "mounted" to mean "securely affixed or fastened to."

Third, Felix relies on a dictionary to argue that "mount" means simply "position." Preliminarily, we note that "it is improper to read [a claim] term to encompass a broader definition simply because it may be found in a dictionary, treatise, or other extrinsic source." Nystrom v. TREX Co., 424 F.3d 1136, 1145 (Fed. Cir. 2005). But more importantly, Felix's argument concerning the dictionary definition of "mount" is at best highly misleading and borders on a misrepresentation to the court. Citing a page from Merriam-Webster's Collegiate Dictionary (10th ed. 1997), Felix asserts that "[t]he dictionary definition of 'mount' includes 'to put or have in position' . . . ." Appellant's Br. at 22 (citing J.A. 612). But this is a misquotation. The actual definition in the cited dictionary is: "to put or have (as artillery) in position." J.A. 612 (emphasis added). A definition concerning artillery is of little relevance to a patent concerning a truck bed. By omitting the "as artillery" qualification, Felix has distorted the meaning of the cited definition. Without ellipses or some other indication that the "as artillery" language has been removed, Felix's quotation is highly misleading. Each of Felix's other proposed dictionary definitions—though quoted accurately—concerns a specialized meaning of "mount" inapplicable in the context of the '625 patent, and is inconsistent with the

patent's use of the word "mounted."  See J.A. 612 (defining "mount" to include "to set on something that elevates" and "to seat oneself (as on a horse) for riding" (emphasis added)).  Moreover, the very dictionary that Felix cites also includes the more general definition "to attach to a support," id.—which is fully consistent with the use of the term "mounted" in the '625 patent.  We therefore reject Felix's dictionary definition argument.

Finally, Felix argues that the preposition "on" in the phrase "weathertight gasket mounted on said flange," '625 patent col.6 l.1 (emphasis added), suggests that "mounted" is meant to refer only to location of the gasket relative to the flange, rather than the relationship between the gasket and the flange.  According to Felix, if the limitation had been intended to indicate a connection between the gasket and the flange, it would have recited "mounted to" rather than "mounted on."  We reject this argument.  The preposition "on" can be used to indicate attachment.  See, e.g., Oxford English Dictionary (2008) (including definition of "on" as "[a]ttached to (a chain, lead, etc.), esp. by way of restraint").  Moreover, the specification of the '625 patent consistently uses the phrase "mounted on"—not "mounted to"—in each instance discussed above, in which the specification describes structures that must be securely affixed or fastened together, else they would fall apart.  See '625 patent col.3 l.28 ("mounted on"); id. col.3 l.31 (same); id. col.3 l.34 (same); id. col.3 l.40 (same); id. col.3 l.44 (same); see also id. col.3 ll.15-16 ("A compartment . . . is mounted (e.g., welded) on the truck bed floor . . . ." (emphasis added)); id. col.3 ll.32-35 ("[A]n actuator cable [is] mounted on the lid lower surface . . . by mounting clips . . . ." (emphasis added)).  Thus, we are not persuaded that the preposition "on" transforms "mounted" into "positioned."

We therefore conclude that the district court's construction of "mounted" was correct. As used in claim 6 of the '625 patent, "mounted" means "securely affixed or fastened to."

## 2. "engaging"

The district court construed "engaging" to mean "coming together and interlocking." <u>Literal Infringement Op.</u> at 2. Felix argues for a broader construction of "contacting or bringing together." Appellant's Br. at 23. In support of this broader construction, Felix offers two arguments.

First, Felix argues that the dictionary definition of "engaging" should control, because the meaning of the term is not discussed in the claims, specification, or prosecution history. Felix then argues that "the dictionary defines 'engage' as 'to bring together'"—citing page 612 of the Joint Appendix. <u>Id.</u> at 24. This statement is false and misleading in several respects. First, there is no definition of "engage" on page 612 of the Joint Appendix; that page includes a dictionary definition of "mount." The only dictionary definitions of "engage" appear several pages later. Second, the only dictionary definition of "engage" anywhere in the Joint Appendix that includes "bring together" is—in full—"to bring together <u>or interlock</u> (<u>weapons</u>)." J.A. 618. Thus, for a second time, Felix's brief has omitted a parenthetical qualification—here, "weapons"— that significantly limits the quoted definition. But even more inexcusably, Felix's brief excluded the phrase "or interlock" from the quoted definition. This is particularly misleading because the only substantive difference between the district court's construction and Felix's proposed construction is that the district court's construction requires the additional element of "interlocking." We reject Felix's misleading dictionary

definition argument. We further remind counsel of the importance of providing full, accurate, and undistorted quotations and citations in briefing before this court.

Second, Felix argues that the district court's construction excludes every embodiment of the invention of the '625 patent, because the drawings of the patent show the gasket merely coming into contact with the lid. This argument is without merit. The gasket limitation requires the gasket to engage the lid when the lid is "in its closed position." '625 patent col.6 l.2. Of the drawings, only figure 2 shows the lid in its closed position, and figure 2 does not depict the gasket at all. Id. fig.2. The remaining figures all show the lid in its open position. There is nothing in those figures that is inconsistent with the gasket "interlocking" the lid when the lid is closed.

Although we reject all of Felix's arguments, we nevertheless conclude that the district court erred by construing "engaging" to require "interlocking." The specification includes a single clause directed to the relationship between the lid and the gasket when the lid is closed: "a closed position (FIG. **2**) with the gasket **18** sealingly engaging the lid **22** adjacent to its edges **22***a-d* on the lid lower surface **22**." Id. col.3 ll.24-26 (emphasis added). The specification's use of the phrase "sealingly engaging" makes clear that the way that the gasket engages the lid is by forming a seal. This, of course, is the normal function of a gasket. See, e.g., Means Illustrated Construction Dictionary 275 (3d ed. 2000) (defining "gasket" as "[a]ny of a variety of seals made from resilient materials and placed between two joining parts (as between a door and its frame, an oil filter and its seat, pipe threads and their fitting, etc.) to prevent the leakage of air, water, gas, or fluid"); Don Goodsell, Dictionary of Automotive Engineering 97 (2d ed. 1995) (defining "gasket" as a "static seal used to contain pressure and prevent leakage . . .").

In contrast to "sealing," "interlocking" suggests that some part of the gasket must be constrained or in some manner held by some part of the lid, beyond simply being sealed to the lid. Like the specification, the prosecution history of the '625 patent nowhere suggests that "engaging" means "interlocking." Because we find no basis for such additional limitation in the specification or prosecution history, we modify the district court's construction of "engaging" as used in claim 6 of the '625 patent to mean "coming together to form a seal." Even though the district court erred in including "interlocking" in its claim construction, the error is harmless as it does not affect the district court's determinations of either literal infringement or infringement under the doctrine of equivalents.

## B. Literal Infringement

The district court entered summary judgment of no literal infringement, concluding that Honda's accused In-Bed Trunk could not satisfy the gasket limitation. The district court reached that conclusion because the gasket of the In-Bed Trunk was mounted on the lid, not the flange. Literal Infringement Op. at 5. "We review a grant of summary judgment de novo, reapplying the standard that the district court employed. Drawing all reasonable inferences in favor of the nonmovant, summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Net MoneyIN, Inc. v. VeriSign, Inc., 545 F.3d 1359, 1365 (Fed. Cir. 2008) (internal quotation marks, citations, and modifications omitted).

As the illustrations depicted above make clear, the gasket of the accused In-Bed Trunk is not securely affixed or fastened to the flange of the channel of the storage compartment. Instead, the gasket of the accused In-Bed Trunk is affixed to the lid. The

In-Bed Trunk therefore does not include "a weathertight gasket mounted on [a] flange" as required by the gasket limitation. Honda was therefore entitled to summary judgment of no literal infringement.

Felix argues that the gasket of the In-Bed Trunk is affixed to the flange when the lid is closed, and that the claim only requires the gasket to be "mounted" on the flange when the lid is "in its closed position." But this argument misreads the claim language. The limitation recites "a weathertight gasket mounted on said flange and engaging said lid in its closed position." '625 patent col.6 ll.1-2. The limitation recites two characteristics of the weathertight gasket: the gasket is both "mounted on said flange" and "engaging said lid in its closed position." The antecedent of "it" in the phrase "in its closed position" can only be the noun "lid." It would make no sense for either the "gasket" or the "flange" to be "in its closed position." Therefore, the "in its closed position" language concerns the "engaging" aspect of the limitation, not the "mounted" aspect. The gasket must be "mounted on said flange"—meaning securely affixed or fastened to the flange—whether or not the lid its "in its closed position." Because the gasket of the In-Bed Trunk is not securely affixed or fastened to the flange (as is apparent when the lid of the In-Bed Trunk is open), the In-Bed Trunk does not literally infringe. We therefore affirm the district court's summary judgment of no literal infringement.

## C. Doctrine of Equivalents

On Honda's second motion for summary judgment, the district court held that Felix was precluded under the doctrine of prosecution history estoppel from arguing that the In-Bed Trunk infringed the gasket limitation by equivalents. Equivalents Op. at 7. Felix argues that he rebutted the presumption of prosecution history estoppel by

showing that the amendment giving rise to the estoppel was tangential to the equivalent in question—namely, a gasket mounted on the lid, rather than the flange of the channel. Our review is de novo. See Net MoneyIN, 545 F.3d at 1365 ("We review a grant of summary judgment de novo . . . ."); Cybor, 138 F.3d at 1460 ("Prosecution history estoppel is a legal question subject to de novo review on appeal.").

"The doctrine of equivalents allows the patentee to claim those insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial changes." Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd., 535 U.S. 722, 733 (2002). "However, prosecution history estoppel may bar the patentee from asserting equivalents if the scope of the claims has been narrowed by amendment during prosecution." Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp., 370 F.3d 1131, 1139 (Fed. Cir. 2004) (en banc). Amendment-based prosecution history estoppel "arises when an amendment is made to secure the patent and the amendment narrows the patent's scope." Festo, 535 U.S. at 736. "A patentee's decision to narrow his claims through amendment may be presumed to be a general disclaimer of the territory between the original claim and the amended claim." Id. at 740. But the patentee may rebut this presumption by "demonstrat[ing] that the alleged equivalent would have been unforeseeable at the time of the narrowing amendment, that the rationale underlying the narrowing amendment bore no more than a tangential relation to the equivalent in question, or that there was 'some other reason' suggesting that the patentee could not reasonably have been expected to have described the alleged equivalent." Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd., 344 F.3d

1359, 1368 (Fed. Cir. 2003) (en banc) (quoting Festo, 535 U.S. at 741). We address in turn the presumption of surrender and Felix's effort to rebut that presumption.

## 1. Presumption of Surrender

We first consider which amendment—if any—gave rise to a presumption of surrender of claim scope encompassing the equivalent at it issue. The limitation at issue here is the gasket limitation. That limitation was not contained in original independent claim 1, but was present in dependent claim 7. In Felix's first amendment on September 10, 1999, he cancelled original claim 1 and rewrote original dependent claim 7 in independent form as claim 14 to contain all of the limitations of claims 1 and 7. J.A. 490-91. It was this first amendment that had the effect of adding the channel and gasket limitations of dependent claim 7 to the broader claim that was cancelled. "[T]he rewriting of dependent claims into independent form coupled with the cancellation of the original independent claims creates a presumption of prosecution history estoppel." Honeywell, 370 F.3d at 1134. Thus, Felix's decision in the first amendment to cancel original claim 1 and to rewrite original claim 7 in independent form as claim 14 gave rise to a presumption of surrender.[4]

The interesting wrinkle in this case is that even after Felix cancelled original independent claim 1 and rewrote original dependent claim 7 in independent form, the examiner still did not allow the rewritten dependent claim. In other words, even though Felix amended the claim and thereby narrowed its scope in an effort to secure

---

[4] We leave open the question of whether the presumption of surrender would have attached as to the gasket limitation if, in response to the first office action, Felix had cancelled both claim 1 and claim 7, and had rewritten claim 8 in independent form, instead of attempting to secure the broader coverage of rewritten claim 7 as an intermediate step.

allowance, that effort did not succeed.[5]   It was only after claim 8 was rewritten in independent form to include the limitations of claims 1, 7, <u>and</u> 8 that the claim was allowed.   The fact that the first amendment did not succeed and that a further amendment was required to place the claim in allowable form, however, is of no consequence as to the estoppel.   It is the patentee's response to a rejection—not the examiner's ultimate allowance of a claim—that gives rise to prosecution history estoppel.   See <u>Festo</u>, 535 U.S. at 727 ("When the patentee <u>responds</u> to the rejection by narrowing his claims, this prosecution history estops him from later arguing that the subject matter covered by the original, broader claim was nothing more than an equivalent." (emphasis added)); <u>id.</u> at 734 ("[A patentee's] <u>decision to forgo an appeal and submit an amended claim</u> is taken as a concession that the invention as patented does not reach as far as the original claim." (emphasis added)); <u>id.</u> at 740 ("A patentee's <u>decision to narrow his claims</u> through amendment may be presumed to be a general disclaimer of the territory between the original claim and the amended claim." (emphasis added)); <u>Deering Precision Instruments, L.L.C. v. Vector Distribution Sys., Inc.</u>, 347 F.3d 1314, 1325 (Fed. Cir. 2003) ("Deering's addition of [a rewritten independent claim], coupled with the clear surrender of the broader subject matter of the deleted original independent claim presumptively bars Deering from arguing infringement under the doctrine of equivalents."). We therefore hold that the presumption of prosecution history estoppel attaches when a patentee cancels an independent claim and rewrites a

---

[5]     It is immaterial that the obviousness rejection following this amendment was based on different references (Cooper '890 in view of Cooper '519) than the original obviousness rejection (Cooper '890 in view of Williams Flues).

dependent claim in independent form for reasons related to patentability, even if the amendment alone does not succeed in placing the claim in condition for allowance.

It is also immaterial in this case that the cancellation and amendment were to application claims 1, 7, and 14—rather than to application claims 8 and 16, which resulted in the asserted claim. The presumption of surrender "applies to all claims containing the [added] [l]imitation, regardless of whether the claim was, or was not, amended during prosecution." Deering, 346 F.3d at 1326. See also Honeywell, 370 F.3d at 1142 ("[T]he fact that the scope of the rewritten claim has remained unchanged will not preclude the application of prosecution history estoppel if, by canceling the original independent claim and rewriting the dependent claims into independent form, the scope of subject matter claimed in the independent claim has been narrowed to secure the patent."); Builders Concrete, Inc. v. Bremerton Concrete Prods. Co., 757 F.2d 255, 260 (Fed. Cir. 1985) ("[T]he prosecution history of all claims is not insulated from review in connection with determining the fair scope of [the asserted claim]. To hold otherwise would be to exalt form over substance and distort the logic of this jurisprudence, which serves as an effective and useful guide to the understanding of patent claims. The fact that the [the limitation in question] was not itself amended during prosecution does not mean that it can be extended by the doctrine of equivalents to cover the precise subject matter that was relinquished in order to obtain allowance of [another claim]."). Thus, in this case, the cancellation of original independent claim 1 coupled with the rewriting of original dependent claim 7 as independent claim 14 gave rise to a presumption of surrender applicable to all limitations, found in any of the claims of the '625 patent, that correspond to the limitations of claim 7.

We next turn to the scope of the presumptive surrender. "[W]hen a claim is rewritten from dependent into independent form and the original independent claim is cancelled . . . the surrendered subject matter is defined by the cancellation of independent claims that do not include a particular limitation and the rewriting into independent form of dependent claims that do include that limitation. Equivalents are presumptively not available with respect to that added limitation." Honeywell, 370 F.3d at 1144. Equivalents are therefore presumptively not available as to any of the subject matter added in Felix's first amendment. It is immaterial that Felix chose to add both the channel and the gasket limitations, rather than just one. The resulting estoppel attaches to each added limitation. See Lucent Techs., Inc. v. Gateway, Inc., 525 F.3d 1200, 1218 (Fed. Cir. 2008) ("It is not relevant to the determination of the scope of the surrender that the applicant did not need to amend the claims [as they were amended] in order to overcome the prior art."); Regents of Univ. of Cal. v. Dakocytomation Cal., Inc., 517 F.3d 1364, 1381 (Fed. Cir. 2008) ("The fact that narrowing the claim . . . may not have been necessary to distinguish over the prior art does not change the analysis."); see also id. ("[I]t frequently happens that patentees surrender more through amendment than may have been absolutely necessary to avoid particular prior art. In such cases, we have held the patentees to the scope of what they ultimately claim, and we have not allowed them to assert that claims should be interpreted as if they had surrendered only what they had to." (quoting Norian Corp. v. Stryker Corp., 432 F.3d 1356, 1361-62 (Fed. Cir. 2005))). Felix is therefore presumptively barred from relying on the doctrine of equivalents to prove that Honda's In-Bed Trunk meets the gasket limitation—one of the two limitations added by amendment.

## 2. Tangentiality

Felix argues that he has rebutted the presumption of prosecution history estoppel as to the gasket limitation, because "the rationale underlying the narrowing amendment bore no more than a tangential relation to the equivalent in question." Festo, 344 F.3d at 1368. "[T]he patentee bears the burden of showing that a narrowing amendment did not surrender a particular equivalent . . . ." Id. "[A]n amendment made to avoid prior art that contains the equivalent in question is not tangential; it is central to allowance of the claim. . . . [T]he inquiry into whether a patentee can rebut the Festo presumption under the 'tangential' criterion focuses on the patentee's objectively apparent reason for the narrowing amendment[, which must be] discernible from the prosecution history record . . . ." Id. at 1369.

Felix argues that the first amendment "was made because the applicant thought the prior art lacked a channel," not because of the presence or position of a gasket. Appellant's Br. at 34. Felix relies on the language in his argument to the examiner that "the cited references do not show the channel of Claim 7, which is formed at the rim of the bed opening, in combination with the other structure of Claims 1 and 7." J.A. 494. We reject Felix's argument for two reasons. First, the cited language in Felix's argument to the examiner expressly refers not only to the "channel of Claim 7" but also to the "other structure" of the claims. It is therefore not "objectively apparent" from this argument that the channel was the only reason for cancelling original claim 1 and rewriting dependent claim 7 in independent form, as Felix argues. Second, the cited language does not explain the entire amendment. If Felix had intended only to add a channel and not add a gasket, he could easily have simply amended original claim 1 to

add limitation (e) and <u>not</u> limitation (f). Thus, Felix has identified no explanation in the prosecution history for the addition of the gasket limitation, and Felix therefore cannot meet his burden to show that the rationale for adding the gasket limitation was tangential to the presence and position of a gasket.

We agree with the district court that prosecution history estoppel bars Felix from relying on the doctrine of equivalents to show that Honda's In-Bed Trunk meets the gasket limitation—"a weathertight gasket mounted on said flange and engaging said lid in its closed position." We therefore affirm the district court's summary judgment of no infringement under the doctrine of equivalents.[6]

## III. CONCLUSION

For the foregoing reasons, we adopt the district court's construction of "mounted" as "securely affixed or fastened to," and we construe "engaging" as "coming together to form a seal." Applying these constructions, we affirm the district court's summary judgment of no literal infringement. Because we conclude that Felix is barred by the doctrine of prosecution history estoppel from relying on the doctrine of equivalents to prove that the accused In-Bed Trunk meets the gasket limitation, we also affirm the district court's summary judgment of no infringement by equivalents.

<u>AFFIRMED</u>

---

[6] Because we conclude that the district court properly granted summary judgment of no infringement under the doctrine of equivalents as a result of prosecution history estoppel, we do not address Honda's alternative argument that the "all limitations" rule would preclude a finding of infringement.