**ZAMORA RADIO, LLC, Plaintiff,**

v.

**LAST.FM, LTD., CBS Radio Inc., CBS Corp., Slacker, Inc., Pandora Media, Inc., Rhapsody America LLC, Realnetworks, Inc., DKCM, Inc., Soundpedia, Inc., AOL, LLC, Accuradio, LLC, and Yahoo! Inc., Defendants.**

**Case No. 09–20940–CIV.**

United States District Court, S.D. Florida.

Nov. 5, 2010.

■■■■■■■■■
■■■■■■■■■

---

Phillip Edward Holden, The Alvarez Law Firm, Alejandro Alvarez, Coral Gables, FL, John F. Ward, David M. Hill, Michael G. Gabriel, Ward & Olivo, New York, NY, Annette Cristina Escobar, Chalon Tamara Allen, Edward Maurice Mullins, Astigarraga Davis Mullins & Grossman, Miami, FL, for Plaintiff.

Andrew S. Brown, Weil Gotshal & Manges, Mark D. Baker, Tigran Vardanian, Quinn Emanuel Urquhart Oliver & Hedges, New York, NY, Annette Cristina Escobar, Edward Maurice Mullins, Chalon Tamara Allen, Astigarraga Davis Mullins & Grossman, Edward Soto, Robert S. Berezin, Weil Gotshal & Manges, Bruce Judson Berman, Carlton Fields, Samuel M. Sheldon, McDermott Will & Emery LLP, Stanley Howard Wakshlag, Kenny Nachwalter, P.A., Paul Joseph Schwiep, Coffey Burlington, Miami, FL, Edward R. Reines, Stefani C. Smith, Weil Gotshal & Manges LLP, Redwood Shores, CA, J. Pieter Van Es, Matthew P. Becker, Richard S. Stockton, Thomas J. Lerdal, Banner & Witcoff, Chicago, IL, Charles K. Verhoeven, Jennifer A. Kash, Linda J. Brewer, Richard H. Doss, Quinn Emanuel Urquhart & Sullivan, LLP, San Francisco, CA, for Defendants.

### ORDER ON DEFENDANTS CBS RADIO, INC., CBS CORPORATION, AOL INC., AND LAST.FM LTD.'S MOTION FOR SUMMARY JUDGMENT OF NON–INFRINGEMENT

EDWIN G. TORRES, United States Magistrate Judge.

This matter is before the Court upon Defendants CBS Radio, Inc., CBS Corporation, AOL Inc., and Last.FM Ltd.'s ("Defendants") Motion for Summary Judgment of Non–Infringement [192]. Previously, the Court issued the Claim Construction Order in this case on March 9, 2010 [D.E. 170]. We have reviewed the motion, the response, and the record in the case. For the following reasons, the motion is granted.

## I. BACKGROUND

This is a patent infringement action concerning a U.S. Patent No. 6,349,339 ("the '399 Patent") owned by Plaintiff Zamora Radio, LLC ("Zamora"). Issued on February 19, 2002, the '399 Patent concerns a streaming media system technology commonly referred to as "internet radio." Defendants in this case are "internet radio" service providers who allow their customers to stream music and other web-based services to customers' personal computers, mobile phones or other compatible electronic devices. Users of Defendants' services in question do not have any ownership rights to the music or other data that Defendants stream for playback. Thus, users cannot rewind or replay the streamed data. They can, however, pause or skip the currently played song or audio segment.

On April 10, 2009, Zamora brought this patent infringement action claiming that Defendants' products and services utilize the systems and methods disclosed and claimed in its '399 Patent. Defendants answered the Complaint and filed counterclaims for non-infringement and invalidity.

The patent-in-suit, titled "System and Method for Utilizing Data Packets" sets forth 43 claims. Generally speaking, the '399 Patent relates to a system and method for providing a predetermined group of data packets to a user who may utilize (e.g. review, listen, watch, read, etc.) such data packets with a user computing arrangement "UCA." See '399 Patent 1:44–55 [D.E. 1 Ex. 1]. The UCA then executes a

set of instructions to utilize the data packets in the predetermined order, whereby the user is allowed to skip ahead to the next data packet in the predetermined order but is prevented from modifying that order or replaying a utilized data packet. *Id.*

Four of the Defendants, CBS Radio Inc., CBS Corporation, AOL Inc., and Last.FM Ltd., now move for summary judgment that their radio internet products do not infringe any of the asserted claims of the '399 Patent. Zamora opposes Defendants' motion arguing that: 1) the motion should be denied as moot in view of Plaintiff's acknowledgment of non-infringement on certain one limitation; 2) the motion should also be denied because all discovery relevant to Defendants' motion was not completed by agreement of the parties; 3) existence of genuine issues of material fact preclude summary judgment of non-infringement at this stage; and 4) Plaintiff may prove infringement by equivalents at trial.

## II. STANDARD OF REVIEW

### A. Summary Judgment Standard

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden is met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991). Rule 56(e) "requires the nonmoving party to go

beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Thus, the non-moving party "may not rest upon the mere allegations or denials of his pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In determining whether a genuine issue of material fact exists, the court must not make credibility determinations or weigh conflicting evidence. *Id.* at 255, 106 S.Ct. 2505. Rather, the court must view the evidence in the light most favorable to the non-moving party, drawing all "justifiable inferences" in its favor. *Id.* (internal citation omitted); *see Atlanta Attachment Co. v. Leggett & Platt, Inc.,* 516 F.3d 1361, 1365 (Fed.Cir.2008) (internal citation omitted). The Federal Circuit has held that "summary judgment is as appropriate in patent case as in any other ...." *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.,* 731 F.2d 831, 835 (Fed.Cir. 1984).

### B. Patent Infringement Analysis

A patent infringement analysis involves two steps: claim construction and then the application of the construed claim to the accused process or product. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed.Cir.1995) (en banc), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). The first step, claim construction, has been held to be purely a matter of law. *See Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1454 (Fed.Cir.1998) (en banc). The second step, application of the claim to the accused product, is a fact-specific in-

quiry. *See Kustom Signals, Inc. v. Applied Concepts, Inc.,* 264 F.3d 1326, 1332 (Fed.Cir.2001) (Patent infringement, "whether literal or under the doctrine of equivalents, is a question of fact."). Summary judgment, therefore, is appropriate in patent infringement suits when it is apparent that only one conclusion regarding infringement could be reached by a reasonable jury. *See Telemac Cellular Corp. v. Topp Telecom, Inc.,* 247 F.3d 1316, 1323 (Fed.Cir.2001).

### C. Burden of Proof

The patentee asserting infringement bears the burden of proof by a preponderance of the evidence. Indeed, the Federal Circuit expressly stated that the "patent owner has always borne the burden of proving infringement." *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.,* 904 F.2d 677, 685 (Fed.Cir.1990). Thus, "[s]ince the ultimate burden of proving infringement rests with the patentee, an accused infringer seeking summary judgment of non-infringement may meet its initial responsibility either by providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case." *Novartis Corp. v. Ben Venue Labs.,* 271 F.3d 1043, 1046 (Fed.Cir.2001).

"[O]n issues in which the nonmovant bears the burden of proof, in contrast to those in which the movant bears the burden, the movant need not 'produce evidence' showing the absence of a genuine issue of material fact in order to properly support its summary judgment motion." *Exigent Tech., Inc. v. Atrana Solutions, Inc.,* 442 F.3d 1301, 1307 (Fed.Cir.2006) (citing *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548). In other words, "nothing more is required than the filing of a summary judgment motion stating that the patentee had no evidence of infringement and pointing to the specific ways in which accused systems did not meet the claim limitations." *Id.* at 1309, 106 S.Ct. 2548. Once the movant has satisfied its initial burden, the "burden of production then shift[s] to [the non-movant] to identify genuine issue that preclude summary judgment." *Optivus Tech., Inc. v. Ion Beam Applications S.A.,* 469 F.3d 978, 990 (Fed.Cir.2006).

### D. Infringement

#### 1. Direct Infringement

A patentee may sue for direct infringement under 35 U.S.C. § 271(a):

> Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States, or imports into the United States any patented invention during the term of the patent therefore, infringes the patent.

■ The "making, using, or selling of a patented invention is the usual meaning of the expression 'direct infringement.' " *Joy Techs. Inc. v. Flakt, Inc.,* 6 F.3d 770, 773 (Fed.Cir.1993).

■ Using the properly construed claims as a guide, the trier of fact must determine whether every claim limitation or its equivalent is found in the accused device or process. *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 29, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). "To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly." *Southwall Techs., Inc. v. Cardinal IG Co.,* 54 F.3d 1570, 1575 (Fed.Cir.1995); *Lantech, Inc. v. Keip Mach. Co.,* 32 F.3d 542, 547 (Fed.Cir.1994) ("For literal infringement, each limitation of the claim must be met by the accused device exactly, any deviation from the claim precluding a finding of infringement."). Accordingly, a claim cannot be literally infringed if any claim element or limitation is missing en-

tirely from the accused product. *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1539 (Fed.Cir.1991). However, "the addition of features does not avoid infringement, if all the elements of the patent claims have been adopted. Nor is infringement avoided if a claimed feature performs not only as shown in the patent, but also performs an additional function." *N. Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 945 (Fed.Cir.1990) (citation omitted).

■■■ In contrast to literal infringement, which requires that the accused device precisely embody every limitation in the claim, the "doctrine of equivalents allows the patentee to claim those insubstantial alternations that were not captured in drafting the original patent claim but which could be created through trivial changes." *Felix v. Am. Honda Motor Co., Inc.*, 562 F.3d 1167, 1181 (Fed.Cir.2009) (internal citation omitted). An "[i]nfringement analysis under the doctrine of equivalents proceeds element-by-element; a generalized showing of equivalency between the claim as a whole and the allegedly infringing product or process is not sufficient to show infringement." *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1286 (Fed.Cir.2009) (internal citation omitted). "The primary test for equivalency is the . . . 'triple identity' test, whereby the patentee may show an equivalen[ce] when the accused product or process performs substantially the same function, in substantially the same way, to achieve substantially the same result, as disclosed in the claim." *Id.*

### 2. Indirect Infringement

■■■ Liability under Section 271(b) arises when a defendant "actively induces infringement of a patent." Induced infringement is found where a person actively and knowingly aids and abets another's direct infringement. *Water Techs. Corp.*

*v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed.Cir. 1988) ("Although section 271(b) does not use the word 'knowing,' the case law and legislative history uniformly assert such a requirement."). In order to establish a claim for induced infringement, the patentee must show that: (1) there has been direct infringement; (2) the alleged infringer knowingly induced infringement; and (3) the alleged infringer possessed specific intent to encourage another's infringement. *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed.Cir.2005). A party may be found liable for induced infringement when it sells a product and provides instructions on how to use it in an infringing manner. *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1360 (Fed.Cir.2006); *see also Metro–Goldwyn–Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936, 125 S.Ct. 2764, 162 L.Ed.2d 781 (2005) ("[I]nstructing how to engage in an infringing use, show[s] an affirmative intent that the product be used to infringe, and a showing that infringement was encouraged overcomes the law's reluctance to find liability when a defendant merely sells a commercial product suitable for some lawful use.").

A defendant is liable for contributory infringement if it:

> offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

35 U.S.C. § 271(c). After sorting through the statutory language, Section 271(c) es-

sentially instructs us that a party who sells a product that can be used for only one purpose must be liable for contributory infringement. *See Metro–Goldwyn–Mayer Studios,* 545 U.S. at 932, 125 S.Ct. 2764 ("[W]here an article is 'good for nothing' but infringement, there is no legitimate public interest in its unlicensed availability, and there is no injustice in presuming or imputing an intent to infringe.").

Because direct infringement is a necessary element under both Section 271(b) induced infringement and Section 271(c) contributory infringement, courts usually start the analysis by addressing that element of both claims.

## III. ANALYSIS

### A. Defendants' Motion is not Moot

Following this Court's entry of the Claim Construction Order [D.E. 170] on March 9, 2010, Zamora filed its Motion for Entry of Consent Judgment [D.E. 175] contending that, under the adopted claim construction, Defendants' accused products do not infringe on the '399 Patent citing to only one claim limitation.[1] Defendants, however, jointly opposed Plaintiff's motion. [D.E. 176]. They argued that, in addition to the issue on which Plaintiff consented to non-infringement, Defendants are entitled to a judgment as a matter of law of non-infringement on additional grounds. Subsequently, we denied Plaintiff's motion after concluding that "there was obviously no consent from Defendants" for the entry of Zamora's proposed judgment. [D.E. 209].

 Plaintiff now essentially renews its argument that its concession of non-infringement on one claim limitation moots out any possible remaining basis on which summary judgment may be granted in Defendants' favor. We, however, disagree.

Pursuant to 28 U.S.C. § 1295(a)(1), the Federal Circuit has appellate jurisdiction "from a final decision of a district court." "[A] decision is not final, ordinarily, unless it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Cunningham v. Hamilton Co., Ohio,* 527 U.S. 198, 204, 119 S.Ct. 1915, 144 L.Ed.2d 184 (1999). Thus, "final judgment in a patent case will usually produce a judgment of infringement or non-infringement." *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.,* 442 F.3d 1322, 1326 (Fed.Cir.2006).

Plaintiff is technically correct that an entry of a consent judgment of non-infringement based on only one claim limitation produces an appealable "final" order that grants the Federal Circuit appellate jurisdiction. *See, e.g., Mass. Inst. of Tech. v. Abacus Software,* 462 F.3d 1344, 1350–51 (Fed.Cir.2006) (Federal Circuit has jurisdiction to review parties' stipulated entry of final judgment of non-infringement). Here, however, contrary to Plaintiff's assertion, Defendants have not consented to an entry of a judgment that rests only on one claim limitation. Instead, Defendants seek to obtain summary judgment of non-infringement on additional grounds. Absent an agreement with Defendants, Plaintiff does not get to pick and choose the grounds on which final judgment of non-infringement will rest on. Instead, we agree with Defendants that the appeal of this Court's final judgment should proceed

---

1. In our Claim Construction Order we found that the claim term "executing a set of instructions which utilize the data packets in a predetermined order in accord with the rules" means "setting the order of data packets by the software application on the user computer, based on the rules, and then utiliz-

ing the data packets with that order." Based on this finding, Plaintiff consented that because Defendants' accused systems set the order of the data packets by a software application on the Defendants' servers, these systems do not infringe on the '399 patent.

on a fully developed record after consideration of all non-infringement grounds in a properly supported motion for summary judgment.

Furthermore, the Federal Circuit has "criticized trial courts for not providing facts in the record that would assist [appellate court's] ability to determine whether a particular claim term plays a determinative role in infringement or invalidity." *Toshiba Corp. v. Juniper Networks, Inc.*, 248 Fed.Appx. 170, 172 (Fed.Cir.2007) ("Toshiba's stipulation of non-infringement in this case provided no facts regarding how the district court's construction affects the infringement analysis"); *Mass. Inst. of Tech.*, 462 F.3d at 1350–51 (describing an appeal based on bare stipulated concession of non-infringement to be "highly undesirable").

## B. *Lack of Discovery Argument has no Merit*

Next, Zamora argues that Defendants' motion should be denied because *all* discovery relevant to this summary judgment motion has not yet been completed. It contends that following our entry of the Claim Construction Order, the parties have stipulated to stay all further discovery in view of Plaintiff's acknowledgment that the Defendants' accused products could not infringe the '399 Patent under the current claim construction. Defendants, on the other hand, claim that there has never been any stipulation to stay discovery and that they have complied with all discovery requests served on them.

This case was filed on April 9, 2009. Pursuant to this Court's Amended Scheduling Order, the discovery deadline passed on March 26, 2010 [D.E. 169]. Considering the fact that our Claim Construction Order was issued on March 9, 2010, Zamora essentially concedes that it conducted no relevant and material discovery for the

eleven-month time frame following the commencement of this action. It does not offer an explanation, however, why it did not bother to actively pursue discovery from Defendants during that time. We do not see how Zamora planned on litigating this action in the event we adopted its version of the claim construction. Naturally, instead of consenting to judgment of "non-infringement" and allegedly "staying" discovery, Zamora apparently planned to pursue all relevant discovery from multiple independent Defendants on a highly complex patent issue in roughly two weeks. We are not convinced by the logic in Plaintiff's argument regarding its lack of discovery.

 Zamora cites to Rule 56(f) in its support. The rule, however, is clearly inapplicable here. "A Rule 56(f) motion must be supported by an affidavit which sets forth with particularity the facts the moving party expects to discover and how those facts would create a genuine issue of material fact precluding summary judgment." *Harbert Int'l Inc. v. James*, 157 F.3d 1271, 1280 (11th Cir.1998). Plaintiff submitted no affidavit describing the facts it needs or how those facts would create a genuine issue of material fact. Furthermore, Zamora failed to establish "specified reasons" why it could not present essential facts in its opposition. Fed.R.Civ.P. 56(f). Rule 56(f) requires that "[t]he moving party must also have been diligent" in seeking the discovery. *Exigent Technology, Inc. v. Atrana Solutions, Inc.*, 442 F.3d 1301, 1310 (Fed.Cir.2006) (citing *Barfield v. Brierton*, 883 F.2d 923, 931–33 & n. 11 (11th Cir.1989)). Here, Zamora has failed to demonstrate that it exercised diligence during the discovery process. For these reasons, Plaintiff's assertion that Defendants' motion should be denied pursuant to Rule 56(f) is meritless.

Instead, Defendants have proffered that they have completed all of their document

production and substantively responded to Plaintiff's discovery requests well before the close of discovery. It is clear to the Court that any "prejudice" that Plaintiff now faces at the summary judgment stage due to the insufficient amount of necessary discovery can only be attributed to Zamora's own doing.

## C. Non–Infringement

### 1. Asserted Claims and Claim Construction

Before addressing the merits of Defendants' Motion for Summary Judgment, the Court reviews the claims and the Court's construction. As previously noted, the patent-in-suit, titled "System and Method for Utilizing Data Packets," sets forth 43 claims. The '399 Patent relates to a system and method for providing a predetermined group of data packets to a user who may utilize (e.g. review, listen, watch, read, etc.) such data packets with a user computing arrangement "UCA." *See* '399 Patent 1:44–55. The UCA then executes a set of instructions to utilize the data packets in the predetermined order, whereby the user is allowed to skip ahead to the next data packet in the predetermined order but is prevented from modifying that order or replaying a utilized data packet. *Id.*

Of the 43 claims, Claims 1, 21, 26–27, 29–35, 39–40, and 43 are independent claims. Plaintiff alleges that Defendants' systems infringe independent Claims 1, 21, 26, and 32–33. *See* Defs.' Statement of Facts ¶ 10. The parties disputed the meaning of ten terms. Nine of the terms, emphasized below, are found in representative Claim 1 which identifies all the limitations that are at issue in Defendants' motion. The term "limited access" is found in Claim 7:

1. A method, comprising the steps of: providing *"data packets"* from a server arrangement to a user computing arrangement; determining, using at least one of the server and the user computing arrangement, *"rules"* governing *"utilization"* of the data packets by the user computing arrangement and *"preventing"* a user from altering the rules; *"storing"* the data packets on a storage device of the user computing arrangement; and with the user computing arrangement, *"executing a set of instructions"* which utilize the data packets in a *"predetermined order" "in accord with the rules,"* wherein the user of the user computing arrangement is prevented from *"modifying"* the predetermined order.

. . .

7. The method according to claim 6, further comprising the steps of: providing a *"limited access"* to the utilized data packets; and enabling the user to purchase at least one packet of the utilized data packets.

See '399 Patent 7:34–48, 8:16–20.

In our March 9, 2010 Claim Construction Order, we construed the disputed terms in the following manner: The term "data packets" was construed to mean "a group of at least two complete content items (e.g., audio, video, advertisements, or the like)." *See* Claim Construction Order at 8 [D.E. 170]. The term "rules governing utilization" was construed to mean "criteria that define the selecting, grouping, and using." *Id.* at 12. "Storing" was construed to mean "retaining for instantaneous or later use." *Id.* at 13. The term phrase "executing a set of instructions which utilize the data packets in a predetermined order in accord with the rules" was construed as "setting the order of the data packets by the software application on the user computer, based on the rules, and then utilizing the data packets with that order." *Id.* at 17. Finally, the parties have stipulated to the meaning of terms "preventing," "modifying," and "limited access." *Id.* at 12, 18.

## 2. Accused Products and Services

The following facts about Defendants' products and services are undisputed.[2] CBS Radio Inc. ("CBS Radio") is an indirect subsidiary of CBS Corporation. *See* Defs.' Statement of Facts ¶ 1. CBS Radio owns and operates, among other things, terrestrial radio stations, which it re-broadcasts over the internet. In 2008, CBS Radio launched Radio 2.0 in connection with its new internet-only service. *Id.* ¶ 2. CBS Corporation does not make, use or sell Radio 2.0 or any other component or feature of the accused services. *Id.* ¶ 3. Instead, CBS Corporation is the ultimate parent corporation of various operating subsidiaries, including CBS Radio Inc. *Id.* ¶ 4. CBS Radio entered into an exclusive agreement with AOL in 2008 to power the AOL Radio service as delivered through, among other things, Radio 2.0. *Id.* ¶ 5. CBS Radio also has a similar agreement, executed in 2009, with Yahoo! Inc. to power its "Launchcast radio service" through, among other things, Radio 2.0. *Id.* Defendant Last.FM Ltd. ("Last.FM") is a global, community-based music network based in the United Kingdom. *Id.* ¶ 6. It is also a subsidiary of CBS Corporation. *Id.*

Zamora alleges that the '399 Patent is infringed by CBS Radio's Radio 2.0 server operated in combination with the web-based "play.it" browser application. *Id.* ¶ 18. The combination of the Radio 2.0 server and "play.it" application ("the Radio 2.0/play.it system") is accessible through each of CBS Radio's, AOL Radio's, and Yahoo! Music's websites. *Id.* Zamora also alleges that the '399 Patent is infringed by Last.FM Ltd.'s server and web ap-plication software accessible through Last. FM's website ("the Last.FM server/application system"). *Id.* ¶ 32.

### a. The Radio 2.0/play. it System

To use the Radio 2.0/play.it system, an end user navigates to one of the websites maintained by Defendants from a personal computer via the internet. *Id.* ¶ 21. The user then selects from the list of available radio stations, either a terrestrial re-broadcast station or an internet-only station, and the play.it browser application launches on the user's computer. *Id.*

If a terrestrial re-broadcast station is selected, the Radio 2.0 server provides a channel through which content from a terrestrial station is delivered to an end user. *Id.* ¶ 22. The Radio 2.0/play.it system offers no interactive functionality to the user listening to a terrestrial re-broadcast station. *Id.*

If, however, the user selects an internet-only station, the Radio 2.0 server makes a determination of a first song or audio advertisement to send to the end-user's computer. *Id.* ¶ 23. Upon making this determination, the Radio 2.0 server sends a URL to the "play.it" player. *Id.* After the first item has begun to play on the user's computer, the player sends a request to the Radio 2.0 server for another item. *Id.* ¶ 24. At the time the request is made by the player, neither the player nor the server knows what item will be played because the server has not yet determined what the item will be. *Id.* After the Radio 2.0 server makes a determination of what item will come next, it sends a URL to the player, and the user's computer uses a new URL to make a request to initiate the

---

**2.** Although we cite to Defendants' Statement of Facts hereafter, which are largely uncontested by Plaintiff, Defendants present their non-infringement case through: 1) affidavit of Oli Stephensen, the Chief Technical Officer of CBS Interactive Music Group; 2) affidavit of

Mike Brodbelt, the Director of Technical Operations and Infrastructure of Last.FM Ltd.; 3) declaration of Dr. Sheila S. Hemami, Defendants' expert witness; and 4) declaration of Stefani Smith, counsel for Defendants.

download of the next item, and the process repeats as described above. *Id.* After an item has played out to the user, the item is discarded in the user's system and is no longer available or accessible for further use. *Id.* Throughout this process, the user's computer only ever makes a "Get-NextItem" request—without knowing what the next item will be—and then requests a download using the returned URL. *Id.* ¶ 25. More specifically, the software application on the user's computer does not and cannot determine or in any way alter the order of data packets or arrange the data packets in order on the user's computer. *Id.*

### b. The Last.FM Server/Application System

To use the Last.FM server/application system, an end user navigates to the Last.FM website from a personal computer connected to the internet. *Id.* ¶ 36. If the user takes no further action, the Last.FM server determines what radio station to provide to the user. *Id.* ¶ 37. Alternatively, the user may customize a new radio station or may select from one of the internet-only radio stations made available by Last.FM. *Id.*

After the process of station selection is finished, the Last.FM server begins delivery of the first song to the user's computer at the highest speed possible. *Id.* ¶ 38. The Last.FM player begins play-out of the song after 12 seconds of the song have been stored in the user's local cache. *Id.* As the song begins to play-out, the Last.FM server "throttles" the delivery of the song so that, at most, 12 seconds of the song is stored in the local cache while the song plays out. *Id.* Also, as the song plays out, the "played" portion is discarded in the user's system and is no longer available or accessible for further use. *Id.* Upon completion of play-out of a song, the Last.FM server then begins the transfer of the next song. *Id.* ¶ 39. The Last.FM

player cannot determine or in any way alter the order or arrange the data packets in order on the user's computer. *Id.* ¶ 40.

### 3. The Accused Products and Services do not Literally Infringe the Asserted Claims of the '339 Patent

#### a. The Radio 2.0/play. it and the Last.FM Server/Application Systems do not "Execute a Set of Instructions which Utilize the Data Packets in a Predetermined Order in Accord with the Rules" (All Asserted Claims).

 Zamora consented that there is no infringement because Defendants' systems do not "execut[e] a set of instructions which utilize the data packets in a predetermined order in accord with the rules," which per our construction means "setting the order of the data packets by the software application on the user computer, based on the rules, and then utilizing the data packets with that order." Instead, the systems in question, not the user's computer, determine which songs or advertisements will be utilized. *See* Defs.' Statement of Facts ¶¶ 25–26, 39–41. Because all asserted claims include this limitation, Defendants are entitled to summary judgment of no infringement on this ground.

#### b. The Radio 2.0/play. it System does not have a "Predetermined Order" of Data Packets (All Claims)

 The asserted claims require that the data packets be set in a "predetermined order" before they are played. *See, e.g.,* '399 Patent, Claim 1, 7:44–46 ("with user computing arrangement, executing a set of instructions which utilize the data packets in a predetermined order").

We previously construed the term phrase: "executing a set of instructions which utilize the data packets in a predetermined order in accord with the rules" to mean "setting the order of the data pack-

ets by the software application on the user computer, based on the rules, and then utilizing the data packets with that order." Although the term "predetermined order" has not been explicitly construed, our construction of the executing limitation requires that the software on the user's computer set the order of the data packets "and then utiliz[e] the data packets in that order." In other words, the "predetermined order" of packets must be set before the group is used.

Here, there is no dispute that the Radio 2.0/play.it system does not meet the predetermined order limitation because, rather than have a sequence of data packets set in advance of utilization, each song is selected and utilized by the listener essentially one song at a time. *See* Defs.' Statement of Facts ¶¶ 23–26. As previously explained, after a listener selects a radio station, the Radio 2.0 server makes a determination of what URL to send to the player. *Id.* ¶ 23. After the user's computer makes an "http" request based on that URL and begins receiving the song, the user's computer then sends a "GetNextItem" command to the Radio 2.0 server. *Id.* ¶ 25. At that point, and only after utilization of the first song has begun, the Radio 2.0 server makes a determination of what item to next send to the user's computer. *Id.* ¶ 24. Thus, the Radio 2.0/play.it system does not create a "predetermined order" of "data packets" (i.e., groups of at least two complete songs). Accordingly, Defendants are entitled to summary judgment of no infringement on this basis.

c. *The Radio 2.0/play. it and the Last.FM Server/Application Systems do not have "Rules Governing Utilization of the Data Packets by the User Computing Arrangement" (Claims 1, 21, 26, 30–31, and 33)*

█ Each of the independent Claims 1, 21, 26, 30–31, and 33 requires that there be

"rules governing utilization of the data packets by the user computing arrangement." *Id.* ¶ 13. We construed the phrase "rules governing utilization" to mean "criteria that define the selecting, grouping, and using." *See* Claim Construction Order at 12.

Defendants have proffered uncontested evidence that the user's computer in the Radio 2.0/play.it and Last.FM server/application systems do not select and group the songs used by the user's computer as required by the claim limitation. *See* Defs.' Statement of Facts ¶¶ 26 & 41. As such, summary judgment of non-infringement in favor of Defendants is entered on this basis as well.

d. *The Last.FM Server/Application System does not Provide "Data Packets" from a Server to a User Computer (All Claims) or Store "Data Packets" on the User Computer (Independent Claims 1, 26, 30–33)*

█ The asserted claims all require that "data packets" be provided from a server to the UCA. As previously noted, we have interpreted the term "data packets" to mean "a group of at least two complete content items (e.g., audio, video, advertisements, or the like)."

It is undisputed that the Last.FM server/application system does not "provide" data packets to a user's computer, nor does it "store" data packets at the user's computer. The Last.FM server transmits content as fast as possible until 12 seconds worth of a song is stored in the user's local cache. *Id.* ¶ 38. At that point, the server "throttles" the system and only transmits content at the same rate that play out occurs so that, at most, 12 seconds worth of a song is ever available for use on the

user's computer. *Id.* At no point in time does the Last.FM server provide more than 12 seconds of a song (or any other playable content) to be stored and available for use on the user's computer. *Id.* ¶ 39. Therefore, at no point are there at least two complete content items provided and stored on the user's computer, and available for use.

Accordingly, Defendants are entitled to a judgment as a matter of law of no infringement for the reasons discussed above.

#### e. No Single Entity Infringes All the Limitations in a Single Claim (All Claims).

Defendants contend that Plaintiff's allegations against them are barred by the doctrine of divided infringement.

■ "Infringement requires, as it always has, a showing that a defendant has practiced each and every element of the claimed invention." *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1380 (Fed.Cir.2007) (internal citation omitted). Under the "divided infringement" theory, if a third party carries out one or more steps of the claim on the defendant's behalf, the defendant can still be held liable if it controlled or directed the conduct of the acting third party. *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1330 (Fed. Cir.2008) (The "control and direction" standard is satisfied "where the law would traditionally held the accused direct infringer vicariously liable for the acts committed by another party that are required to complete performance of a claimed method."). Moreover, "[m]aking information available to the third party, promoting the third party, instructing the third party, or facilitating or arranging for the third party's involvement in the alleged infringement is not sufficient." *Emtel, Inc. v. Lipidlabs, Inc.*, 583 F.Supp.2d 811, 839 (S.D.Tex.2008); *Muniauction*, 532 F.3d at 1329–30.

■ Every asserted system claim of the '399 Patent requires, among other things, a "server arrangement" that provides data packets and a "user computing arrangement" that receives, stores, and executes instructions to use the data packets. Also, every asserted independent method claim requires that some steps of the method are performed at the server arrangement, while other steps must be performed at the user's computer. Here, the "server arrangements" are provided by Defendants, while the accused "user computing arrangement"—the personal computers used by end-users of the Radio 2.0/play.it and Last.FM server application systems—are not provided by any of the Defendants. Furthermore, it is undisputed that there is nothing akin to an agency relationship between Defendants and users of Defendants' systems who provide and use the UCAs.

Accordingly, because the claims require multiple actors to meet the limitations of the accused claims and because there is no dispute that the parties involved do not control or direct each others' actions or their computers, Defendants are entitled to summary judgment of no infringement on this basis as well.

#### f. No Indirect Infringement (All Claims)

■ For similar reasons, summary judgment of no indirect infringement is also warranted. Liability under 35 U.S.C. §§ 271(b) and (c) requires the existence of a direct infringement. *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed.Cir.2004). Thus, because Defendants do not directly infringe on the '399 Patent, they cannot be liable for inducing or contributing to infringement.

### g. The Accused Products and Services do not Infringe Under the Doctrine of Equivalents

■■■ The doctrine of equivalents protects a patent owner against an accused infringer who appropriates the invention, but makes insubstantial changes to avoid literal infringement. As noted by the Supreme Court, the doctrine "has taken on a life of its own, unbounded by the patent claims." *Warner–Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 28, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). When applied too broadly, the doctrine interferes with the patent's public notice function by preventing competitors from determining what particular claims cover. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 732–34, 122 S.Ct. 1831, 152 L.Ed.2d 944 (2002). Due to these concerns, several principles limit the scope of equivalents to which a patent claim is entitled. The doctrine cannot be applied so broadly that it would: 1) capture subject matter surrendered during prosecution; 2) encompass prior art; or 3) vitiate a claim limitation. *K–2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1366–68 (Fed.Cir.1999). Here, Defendants are entitled to summary judgment of no infringement under the doctrine of equivalents for several reasons.

First, Zamora has put forth no evidence regarding infringement under the doctrine of equivalents.

Second, a finding of equivalence would vitiate several claim limitations. The doctrine of equivalents cannot be used to read out limitations, nor can it encompass something that is the exact opposite of the claimed invention. *SciMed Life Systems, Inc. v. Advanced Cardiovascular Systems, Inc.*, 242 F.3d 1337, 1346–47 (Fed.Cir.2001) ("the doctrine of equivalents cannot be employed in a manner what wholly vitiates a claim limitation"). Here, a finding of equivalence would vitiate several claim limitations, such as those requiring the transmission of groups of complete songs and rules governing the selection, grouping, and using of data packets by the UCA. Indeed, Defendants proffer that their products use similar features as the prior art system that the '339 Patent inventor distinguished from his invention. For example, Radio 2.0 uses "progressive download" to deliver content to users, a technique that undisputedly existed in the prior art. *See* Defs.' Statement of Facts ¶¶ 30–31. Thus, it would be improper for the '339 Patent to cover similar functionality in the Defendants' products under the doctrine of equivalents.

Finally, the prosecution history precludes a finding of infringement under the doctrine of equivalents. During prosecution, the inventor amended the claims by replacing language that permitted either the server or UCA to order the songs with language that allowed only the UCA to generate the "predetermined order." *See* Claim Construction Order at 15–16. Because the applicant narrowed the claims to gain allowance, Zamora may not now assert that the '399 Patent covers the Defendants' systems where the server selects songs. *See, e.g., Festo Corp.*, 535 U.S. at 740, 122 S.Ct. 1831 ("[a] patentee's decision to narrow his claims through amendment may be presumed to be a general disclaimer of the territory between the original claim and the amended claim"). Any holding to the contrary would permit Zamora to do exactly what the Patent and Trademark Office forbade—claim portions of the invention disclosed in the prior art.

For all of the above reasons, the Court grants Defendants' motion summary judgment of no infringement under the doctrine of equivalents.

### h. CBS Corporation and Last.FM

Defendants CBS Corporation and Last.FM each move on separate additional

grounds for summary judgment in their favor. CBS Corporation argues that, being merely a parent company of CBS Radio and Last.FM, it does not control or direct the actions of those two companies. Thus, it cannot be liable for infringement of the '339 Patent through the accused Radio 2.0/play.it or the Last.FM server/application systems. Last.FM, on the other hand, asserts that it cannot infringe the '339 Patent because its server "resides" outside the United States as is controlled and operated by actors in the United Kingdom.

However, having already concluded that Defendants' systems and services do not directly and indirectly infringe on the '339 Patent, we do not need to reach the merits of these two arguments.

## IV. CONCLUSION

Based upon a thorough review of the record as a whole and the arguments presented by the parties in their motions and at the hearing, it is hereby **ORDERED** that Defendants CBS Radio, Inc., CBS Corporation, AOL Inc., and Last.FM Ltd.'s Motion for Summary Judgment of Non–Infringement [D.E. 192] is **GRANTED** and a summary judgment is entered in favor of Defendants and against Plaintiff Zamora Radio LLC on Count I of the Complaint and Count I of Defendants' Counterclaim.